# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BOGUSTAWA FREY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 CV 06284 |
| | ) | |
| HOTEL COLEMAN and | ) | Judge John J. Tharp, Jr. |
| VAUGHN HOSPITALITY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Bogustawa Frey, brings claims against her former employer, Hotel Coleman ("HC"), and its independently-hired management company, Vaughn Hospitality ("VH"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq ("Title VII") and the Illinois Human Rights Act, 775 ILCS 5/7A-102(C)(4) ("IHRA") for sexual harassment, creation of a hostile work environment, pregnancy discrimination, and retaliatory discharge for filing a charge with Illinois Department of Human Rights (IHR) and the Equal Employment Opportunity Commission (EEOC). The defendants are unrelated LLCs, each incorporated in the state of Illinois. Frey now brings this uncontested summary judgment against HC.[1] For the following reasons, Frey's motion is granted in full.

---

[1] As explained in the Court's prior order denying HC's motion to dismiss, Dkt. 56, HC is unrepresented in this action. Consequently, it has not been able to respond to the pending summary judgment motion. *See Old Ben Coal Co. v. Off. of Workers' Compen. Programs*, 476 F.3d 418, 418-19 (7th Cir. 2007). Frey's motion, then, is akin to a motion for a default judgment, since HC's failure to respond results in the admission of all facts that Frey has properly set forth in her motion. Those admissions, however, do not bind, or prejudice, HV in any way. As indicated in the Court's order of February 4, 2014, Dkt. 79, the factual determinations made on summary judgment here will have no collateral estoppel effect on defendant VH, against whom Frey does not seek summary judgment. VH and Vaughn dispute Frey's allegations of harassment, discrimination, and retaliation, but Frey's motion does not target them and they

## BACKGROUND[2]

Defendant HC was the corporate owner of the Holiday Inn Express located in Algonquin, Illinois. HC, however, was not involved in the daily operations of the hotel. Instead, the company hired defendant VH as independent manager responsible for the day-to-day operations of the building. As the sole owner of VH, Michael Vaughn acted as the hotel's general manager and was responsible for managing, hiring, and terminating employees. PSOF ¶ 4.

In August 2008, Frey was hired by HC as a guest services representative for its Algonquin location. PSOF ¶ 5. Frey alleges that shortly after she started working there, Vaughn began to make unwanted sexual advances towards her. PSOF ¶ 6. She contends these advances included telling her that he could have any woman he wanted; that she should put a penny in a jar every time she had sex with her husband; asking if he could touch her stomach; inviting her to a hotel room; telling her he wanted to have phone sex with her; telling her she had a sexy body; and telling her that it was a waste that she was pregnant, among other things. PSOF ¶ 7. Frey objected to these comments and—following HC's sexual harassment policy—she complained about Vaughn's conduct to the housekeeping manager. PSOF ¶ 9. But when the housekeeping manager spoke to Vaughn about Frey's complaints, Vaughn allegedly laughed them off and the harassment continued. *Id.*

In June of 2009, Frey informed Vaughn that she was expecting a child. PSOF ¶ 13. According to Frey, her work environment then began to change. PSOF ¶ 14. She had her hours

---

cannot respond on HC's behalf. Vaughn has filed its own motion for summary judgment, which the Court is granting in a contemporaneous order.

[2] The court takes the following facts from Frey's Statement of Material Facts (PSOF), which is largely predicated on the requests to admit that she sent to defendant HC. As discussed in this court's previous order, HC's failure to properly respond to those requests constitutes an admission of the facts alleged. HC has not filed its own statement of facts and has offered no response to this motion. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009).

cut as new staff was being hired. *Id.* She was not given a position as Executive Sales Manager, which Vaughn had allegedly promised her. *Id.* She was moved from day shift to night shift, but did not receive the pay raise that was normally associated with that position. *Id.* Frey began to complain about pain associated with her pregnancy, including swollen ankles and back pain, and requested accommodation. *Id.* But, according to her, those complaints were disregarded and she was asked to stand for long periods of time and to perform manual labor. *Id.*

Sometime in the spring of 2010, Frey went on maternity leave. While she was on leave, Frey filed a discrimination claim with the EEOC and the IHR. PSOF ¶ 18. Frey returned from maternity leave on April 12, 2010, but one week later Vaughn fired her for allegedly stealing another employee's cell phone. PSOF ¶ 20. HC now admits that it in fact had no evidence that Frey had stolen the cell phone and had no basis for firing Frey. PSOF ¶ 22. Frey then brought this civil complaint alleging, among other things, that the theft allegation was fabricated by the defendants, and that she was in fact terminated in retaliation for filing her EEOC complaint. Frey now moves for summary judgment on all her claims against HC, which has not filed a response.[3]

---

[3] Although HC did not file a brief raising the issue, the Court notes that Frey's complaint has satisfied the procedural requirements of Title VII. In order to bring a civil claim, the plaintiff must first file a complaint with the EEOC and receive a right-to-sue letter. *See* 42 U.S.C. § 2000e-5(f)(1)(A). When the plaintiff receives her letter, she may then proceed with filing a civil complaint. The scope of the EEOC complaint generally limits the scope of the discrimination claim. *Moore v. Vital Products, Inc.*, 641 F.3d 253, 256 (7th Cir. 2011) (citing *Sitar v. Indiana Dept. of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003)). Put differently, a plaintiff cannot allege in his Title VII complaint what he has not already alleged in EEOC complaint, unless the additional claim is "reasonably related to the allegations of the charge and growing out of such allegations." *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (*en banc*). Here, Frey has properly received a right to sue letter and her claims against HC are within the scope of her complaint filed with the EEOC.

# DISCUSSION[4]

Summary judgment is only appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding Frey's motion for summary judgment, the Court must construe all facts and inferences in favor of the nonmoving party. *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015). If the moving party has demonstrated the absence of a disputed material fact, then the burden shifts to the nonmoving party to "provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). Based on the undisputed facts in the record, and because HC has made a number of fatal admissions during discovery, Frey has shown that there are no disputed material facts with respect to her claims. Because HC has failed to respond and provide evidence of specific facts that illustrate such a dispute, Frey's motion for summary judgment is granted in its entirety.

## A. Sexual Harassment[5]

Frey contends that HC subjected her to a sexually hostile and abusive work environment, which was created by Vaughn's unwanted sexual advances. Under Title VII, in order to prevail

---

[4] Frey's complaint alleges violations of both the IHRA and Title VII. Both statutes, however, are interpreted in the same manner and the discrimination claims are structured in the same fashion. *Gusciara v. Lustig*, 806 N.E.2d 746, 750 (Ill. App. 2d Dist. 2004) (court noting that in construing and applying the IHRA, Illinois courts "have long followed federal cases interpreting Title VII of the Civil Rights Act of 1964."); *Carter Coal Co. v. Human Rights Comm'n*, 261 Ill. App. 3d 1, 14, 633 N.E.2d 202, 211 (Ill. App. 1994) (same).

[5] The Amended complaint includes counts for both "sexual harassment" and "hostile work environment." Courts have distinguished between "*quid pro quo* sexual harassment," where a grant or denial of an economic benefit is tied to the unwelcome sexual advance, and "hostile environment sexual harassment," where the sexual conduct interferes with work performance, *see Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986); *Venters v. City of Delphi*, 123 F.3d 956, 975 (7th Cir. 1997), but the Amended Complaint does not appear to distinguish the two counts on that basis (or any other), so the analysis set forth here applies to both. *Walko v. Acad. of Bus. & Career Dev., LLC*, 493 F. Supp. 2d 1042, 1046-47 (N.D. Ill. 2006) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 751-54).

on her claim that Vaughn's sexual harassment created a hostile work environment Frey she must show that: "(1) she was subjected to unwelcome sexual harassment; (2) the harassment was based on sex; (3) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile or offensive working environment that seriously affected her psychological well-being; and (4) there is a basis for employer liability." *Moser v. Indiana Dept. of Corrections*, 406 F.3d 895, 902 (7th Cir. 2005). The requirements to make out a sexual harassment claim under the IHRA are substantially the same. *See Sangamon County Sheriff's Dept. v. Illinois Human Rights Comm'n*, 908 N.E.2d 39, 46 (Ill. 2009) (court noting that to make out a claim under the IHRA that sexual harassment created a hostile work environment, the plaintiff must show there were "unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature, which has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment.").

It is clear that Frey was subject to unwelcome sexual harassment. For an employer's conduct to be considered actionable sexual harassment, "it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). "It is not enough that a supervisor or coworker fails to treat a female employee with sensitivity, tact, and delicacy, uses coarse language, or is a boor. Such failures are too commonplace in today's America, regardless of the sex of the employee, to be classified as discriminatory." *Minor v. Ivy Tech State College*, 174 F.3d 855, 858 (7th Cir. 1999). In making this determination, the impact of the perpetrator's conduct on the plaintiff's work environment is assessed both objectively and subjectively. *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 806-07 (7th Cir. 2000).

Here, the subjective inquiry can be dealt with swiftly. To satisfy the subjective analysis, it must be clear that the plaintiff actually perceived her work environment as hostile. *Id.* In Frey's uncontested statement of facts she indicates that she objected to Vaughn's comments and that he "was aware that the comments were offensive at the time he made them." PSOF ¶ 9. As instructed by HC's sexual harassment policy, she then complained to the housekeeping supervisor about Vaughn's conduct. The supervisor spoke with Vaughn, but he continued to make unwanted advances on Frey. Finally, Frey felt as if she had no choice but to file a complaint with the EEOC and the IHRC. These facts more than adequately indicate that Frey subjectively believed that she was being harassed.

The objective inquiry is no more difficult given the lack of disputed facts on the record. When analyzing the objective severity of harassment, the courts take the perspective of a reasonable person in the plaintiff's position, considering all the relevant circumstances. *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998). These circumstances include including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Equal Employment Opportunity Commission v. Mgmt. Hospitality of Racine, Inc.*, 666 F.3d 422, 432 (7th Cir. 2012). Drawing the line between objectively unreasonable and reasonable conduct can be difficult in any context, but it is particularly difficult in the socially charged situations were sexual harassment claims arise. As the Seventh Circuit put it, "it can be difficult to determine when sexual harassment is actionable…[o]n one side lie sexual assaults; other physical contact…uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures.

On the other [unactionable] side lies the occasional vulgar banter, tinged with sexual innuendo." *Baskerville v. Culligan Intern*. Co., 50 F.3d 428, 430 (7th Cir. 1995).

The defendant's judicial admissions make this normally difficult line drawing task straightforward. HC has admitted the statements made by Vaughn were allegedly frequent, severe, and humiliating. PSOF ¶ 10. According to HC's admissions, Vaughn's unwanted sexual advancements towards Frey began shortly after she was hired. PSOF ¶ 9. Vaughn's conduct persisted through Frey's pregnancy, which began around June 2009. PSOF ¶¶ 13-15. Frey made clear to Vaughn that the advancements were unwanted. PSOF ¶ 8. HC also admitted that they believed Vaughn's conduct was objectively unreasonable, and that a reasonable person would find his conduct offensive. Given these admissions by the defendant, no reasonable jury could find that Vaughn's conduct was appropriate.

Second, it is also readily apparent that Vaughn's harassment of Frey was based on sex. To satisfy this element, the employee must demonstrate that she was "subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature." *Rennie v. Dalton*, 3 F.3d 1100, 1107 (7th Cir. 1993) (internal quotation and citation omitted). Vaughn, on numerous occasions, made sexual advances on Frey by asking her to accompany him to his hotel room, and by soliciting her for phone sex. PSOF ¶ 7. Vaughn also intentionally dropped business cards so he could stare at Frey as she picked them up. *Id.* He made unwelcome sexual remarks regarding Frey's appearance. *Id.* Again, given the undisputed facts on record, a reasonable jury could only conclude that Vaughn's remarks were based on sex.

Third, it is also apparent Vaughn's harassment unreasonably interfered with her work performance. To determine whether an employer's harassment unreasonably interfered with an

employee's work, courts engage in an objective inquiry that evaluates the circumstances of the harassment and its impact on the plaintiff's work performance. *Moser*, 406 F.3d at 902. Again, this objective analysis focuses on the severity and pervasiveness of the harassment and the impact the conduct would have on a reasonable person. *See id.* Generally, this fact-bound element is difficult for a plaintiff to survive in defending a summary judgment motion, much less satisfy on its own motion for summary judgment. *Lucero v. Nettle Creek Sch. Corp.*, 566 F.3d 720, 732 (7th Cir. 2009) (court holding the plaintiff's Title VII claim failed as a matter of law despite her allegations that she was called a "dirty Mexican"); *Coolidge v. Consol. City of Indianapolis*, 505 F.3d 731, 734 (7th Cir. 2007) (single incident involving pornography depicting necrophilia did not constitute hostile work environment); *McPherson v. City of Waukegan*, 379 F.3d 430, 439 (7th Cir. 2004) (finding that incidents where supervisor asked plaintiff about her bra, grabbed her top, and requested to make a "house call" when she called in sick, were not severe or pervasive enough to constitute a hostile work environment); *Silk v. City of Chicago*, 194 F.3d 788, 806-07 (7th Cir. 1999)(court finding that threat of physical violence and passive indication that the plaintiff could find a bomb under his car one day were insufficient to create a hostile work environment) ; *Steinbarth v. Whole Foods Mkt.*, 72 F. Supp. 3d 916, 927 (N.D. Ill. 2014); *Chaparro v. City of Chicago*, 47 F. Supp. 3d 767, 777 (N.D. Ill. 2014) (in granting defendant's summary judgment motion, court noting that being "lured" into a media-work room to watch video of a woman performing fellatio did not unreasonably interfere with plaintiff's work environment).

But here, given HC's admissions, it is readily apparent that a reasonable jury could only find that Vaughn's harassment interfered with her work performance. HC admitted that Vaughn's conduct was humiliating and unreasonable. PSOF ¶ 10. Frey asserts that Vaughn's

advances occurred over the course of months, and that when she refused those advances, her work climate suffered in that she was switched to night shift; not compensated properly; and passed up for promotion. Vaughn's conduct then drove Frey to report Vaughn's actions to her housekeeping supervisor. PSOF ¶ 9. HC offers no facts to dispute the above allegations, only admissions. Based on this record, a reasonable jury could only find that Vaughn's conduct unreasonably interfered with her work performance.

Lastly, a basis for employer liability is readily available here. "An employer is subject to vicarious, and strict, liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765. As Frey notes, HC admitted that Vaughn was Frey's "supervisor." Neither Title VII, nor the IHRA,[6] however, defines the term "supervisor." Accordingly, in assessing whether an employee is a supervisor, courts turn to common law principles of agency that focus on control and the "power to *directly* affect the terms and conditions of the plaintiff's employment." *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 506 (7th Cir. 2004) (emphasis in original). In this vein, a supervisor will generally have "the authority to hire, fire, promote, demote, discipline or transfer" the employee. *Jajeh v. Cnty. of Cook*, 678 F.3d 560, 568 (7th Cir. 2012). Here, it is apparent that Vaughn had the authority to "hire, fire, demote, promote, transfer, or discipline" Frey. She contends, and HC does not contest, that Vaughn was the one who hired her. PSOF, Ex. 3 ¶ 1. Vaughn also

---

[6] It is worth noting that here the IHRA diverges from the requirements of Title VII. Under Title VII an employer is only liable for the acts done by a supervisor who has the ability to control the terms of an employee's employment. Rhodes, 359 F.3d at 506. The IHRA, however, incurs strict liability on companies for *all* supervisors who create a hostile work environment, notwithstanding their inability to influence the terms of employee's employment. Sangamon County Sheriff's Dept. v. Illinois Human Rights Commn., 908 N.E.2d 39, 45 (Ill. 2009). Because Vaughn satisfies Title VII's more stringent definition of supervisor, he readily satisfies the IHRA more liberal standard.

allegedly promised her an executive position, which would indicate that he had the power to promote her. PSOF ¶ 14. Frey also asserts that Vaughn transferred her from the "front desk" shift to the "night audit" shift after she declined his advances and told him she was pregnant. *Id.* Based on these uncontested facts, it is apparent that Vaughn had the authority to directly control the terms of Frey's employment, which makes him her supervisor for purposes of Title VII. HC can therefore be held strictly liable for Vaughn's conduct. *See Parkins*, 163 F.3d at 1032.

Given the facts on record and HC's admissions, a reasonable jury could only find that Vaughn made unwanted sexual advances on Frey and that those advances constituted actionable sexual harassment, which created a hostile work environment. Thus, Frey's summary judgment motion with respect to her Title VII and IHRA sexual harassment claims is granted.

**B. Pregnancy Discrimination**

Frey also alleges that HC discriminated against her because of her pregnancy. Under Title VII, it is unlawful for employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual…because of such individual's…sex." 42 U.S.C. § 2000e–2 (a)(1). Congress subsequently amended the phrase "because of sex" to include "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). The IHRA tracks the language of Title VII making it unlawful for "an employer…to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of pregnancy, childbirth, or medical or common conditions related to pregnancy or childbirth." 775 Ill. Comp. Stat. 5/2-102 (I). Evidence of pregnancy discrimination can be shown either via the direct method or the indirect method. *Venturelli v. ARC Community Services*, *Inc.*, 350 F.3d 592, 599 (7th Cir. 2003). Here, Frey offers sufficient evidence under the direct method

to establish HC's liability, so it is unnecessary to consider whether she can do so by the indirect method.

Because HC has not disputed Frey's statement of facts, this is the unusual case in which there is direct evidence of intentional discrimination. During discovery, by failing to properly respond to Frey's requests for admission, HC admitted that Frey "did not get the Executive Sales Manager position because of the pregnancy." PSOF, Ex. 2, ¶ 14. Such an admission does not require the fact finder to make any additional inference in determining that HC's conduct was discriminatory.

Beyond HC's admissions, there is also significant circumstantial evidence that could lead a reasonable fact finder to only conclude that her HC's conduct was discriminatory. Frey told Vaughn that she was pregnant in June of 2009. PSOF ¶ 13. Shortly after, Frey had her hour hours cut even as new staff was being hired. She was then moved from day shift to night shift, which allegedly entitled her to an increase in pay, but she did not receive a raise. There could be any of a number of nondiscriminatory reasons behind HC taking the above actions. HC, however, has not offered any in its defense; rather, Frey offers a number of derogatory statements made by Vaughn around the same time she was transferred. These statements included Vaughn saying "he needed to get laid and that it was a waste [Frey] was pregnant" and that she was the "only reason he hires single girls." PSOF ¶ 15. The combination of Vaughn's statements, the job change with reduced hours, the timing of the events, and HC's admission during discovery, could lead a reasonable fact-finder to only one result: that HC intentionally discriminated against Frey for being pregnant.

Thus, with respect to Frey's Title VII and IHRA claims against HC for pregnancy discrimination, her summary judgment motion is granted.

**C. Retaliation**

Frey's final claim is for retaliation. Frey contends that she engaged in protected activity when she filed her harassment claim with the EEOC and the HRC, and then was terminated by HC in retaliation. A plaintiff can make out a retaliation claim by using either the direct or indirect method. *Majors v. General Elec. Co*., 714 F.3d 527, 537 (7th Cir. 2013). In her summary judgment motion, Frey only relies on the direct method. To prevail on a Title VII claim under the direct method, Frey must show that (1) that she engaged in a statutorily protected activity; (2) that she suffered a materially adverse action by her employer; and (3) there was a causal link between the two. *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 740 (7th Cir. 2011). In the context of an IHRA retaliation complaint, Illinois courts employ the same framework. *All Purpose Nursing Serv. v. Illinois Human Rights Commn*., 563 N.E.2d 844, 850 (Ill. App. 1st Dist. 1990). Here, Frey's uncontested motion easily satisfies these elements.

When a plaintiff files formal charges with a government agency, it is "the most obvious form of statutorily protected activity." *E.g. Greengrass v. International Monetary Systems Ltd*., 776 F.3d 481, 485 (7th Cir. 2015). Thus, there can be no dispute that Frey engaged in protected activity when she made her formal complaint to the EEOC and the HRC. Given that Frey was terminated shortly after returning from maternity leave, it is also readily apparent that she suffered an adverse employment action. *See Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (an adverse employment action is one "that a reasonable employee would have found…materially adverse."); *Castro v. DeVry University, Inc*., 786 F.3d 559, 564 (7th Cir. 2015) (noting, without discussion, that "a termination is of course a materially adverse employment action.").

The final requirement—demonstrating a causal link between the protected activity and the adverse employment action—is generally the most difficult for plaintiffs to satisfy in asserting a retaliation claim. To illustrate causation, the plaintiff must show that the defendant would not have taken the adverse employment action but for her protected activity. *Greengrass*, 776 F.3d at 486. Here, the timing of Frey's termination, coupled with HC's admitted use of pretext to justify the termination, provides more than sufficient circumstantial evidence to link Frey's protected activity to her termination. Initially, Vaughn told Frey that she was being fired because she had allegedly stolen a cellphone and a five-dollar gift card while at work. PSOF ¶ 20. During discovery, however, HC admitted that Vaughn actually had no evidence that Frey had stolen any of the items. PSOF ¶ 21. HC also admitted that at the time it fired Frey, it knew that she had recently filed a discrimination complaint with the EEOC. PSOF ¶ 22. HC's seemingly fabricated basis for terminating Frey, coupled with HC's knowledge that Frey had recently filed a complaint, is classic circumstantial evidence that HC's decision to terminate Frey was pretexual. *Greengrass*, 776 F.3d at 486.

The timing of Frey's termination is also suspect. Frey filed her complaint with the EEOC on March 15, 2010. She returned from maternity leave on April 12, 2010. One week later, HC fired her for allegedly stealing the cellphone, even though there was no basis to believe she did so. *Kidwell v. Eisenhauer,* 679 F.3d 957, 966 (7th Cir.2012) (suspicious timing is generally found when an "adverse employment action follows close on the heels of protected expression). PSOF ¶ 21. Given that HC has offered nothing rebutting these facts—facts that strongly infer that HC's termination of Frey was pretextual—a reasonable jury could only conclude that Frey was fired not because she had allegedly stolen a cellphone, but because she had filed a complaint

with the EEOC and the HRC. *See Greengrass*, 776 F.3d at 486-487. Thus, with respect to Frey's retaliation claim, her summary judgment motion is granted.

\*\*\*

Given HC's admissions during discovery and the facts before the court, there is no relevant factual dispute and a reasonable jury could only find for Frey. Accordingly, the plaintiff's summary judgment motion is granted in its entirety.

Date: October 9, 2015

John J. Tharp, Jr.
United States District Judge