IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BOGUSTAWA "BONNIE" FREY, | ) |
|     Plaintiff(s), | ) ) ) |
|     v. | )    No. 12 CV 06284 |
| INTERCONTINENTAL HOTELS GROUP RESOURCES, INC. et al. | ) )    Judge John J. Tharp, Jr. ) ) |
|     Defendant(s). | ) |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, Bogustawa Frey, brings claims against her former employer, Hotel Coleman ("HC"), and its independently-hired management company, Vaughn Hospitality ("VH"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq ("Title VII") and the Illinois Human Rights Act, 775 ILCS 5/7A-102(C)(4) ("IHRA") for sexual harassment, creation of a hostile work environment, pregnancy discrimination, and retaliatory discharge for filing a charge with the Illinois Department of Human Rights (IHR) and the Equal Employment Opportunity Commission (EEOC).[1] The defendants are unrelated LLCs, each incorporated in the state of Illinois. Defendant VH moves for summary judgment on all claims against it, arguing

---

[1] The Amended Complaint includes counts for both "sexual harassment" and "hostile work environment." Although there is a distinction that can be drawn between "*quid pro quo* sexual harassment," where a grant or denial of an economic reward is tied to the unwelcome sexual advance, and "hostile environment sexual harassment," where the sexual conduct interferes with work performance, *see Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986); *Venters v. City of Delphi*, 123 F.3d 956, 975 (7th Cir. 1997), the Amended Complaint does not appear to distinguish the two counts on that basis, so it is unclear how the two counts differ. In any event, the requirements for both claims are similar and here the distinctions are largely irrelevant. *Walko v. Acad. of Bus. & Career Dev., LLC*, 493 F. Supp. 2d 1042, 1046-47 (N.D. Ill. 2006) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 751-54).

that it is not Frey's "employer" as defined by Title VII and the IHRA. For the following reasons, defendant's motion is granted.[2]

## BACKGROUND[3]

The dispute in this case relates to Frey's claims that during the period (2008 to 2010) she worked as a guest services representative at the Holiday Inn Express located in Algonquin, Illinois (the "hotel"), she was subjected to sexual harassment by Michael Vaughn, VH's owner. VH (and Vaughn) deny Frey's allegations of sexual harassment, but presumably recognizing that resolving that dispute would require a jury, VH has moved for summary judgment only on the ground that it was not Frey's employer. If that is correct, VH cannot be liable to Frey under Title VII or the IHRA, both of which pertain only to the liability of employers for discriminatory conduct. Accordingly, only the facts relevant to a resolution of that issue need be discussed here.

Defendant HC was the corporate owner of the hotel. DSOF ¶ 4. HC, however, was not involved in the daily operations of the hotel. Instead, the company contracted with defendant VH, a hotel management company, to manage the hotel. DSOF ¶ 3. The terms of the contract between HC and VH were set forth in a "Hotel Management Agreement." Pl.'s Resp. to Def.'s Summ. J., Ex. 2. The initial agreement covered the relevant period in this case from June 30, 2008 through June 30, 2010. The contract was terminable within that term based on a buy-out

---

[2] Frey moved for summary judgment against Hotel Coleman. That motion is also being granted in a contemporaneous order.

[3] The facts set forth are taken from VH's statement of facts where they are undisputed or not properly disputed, as well as from Frey's statement of additional facts. Frey disputes a number of VH's fact statements on the ground that VH failed to produce business records to support the facts; in doing so, she generally and improperly ignores Vaughn's testimony in his deposition and supporting affidavit, which constitutes sufficient support for his statement of facts. There is no requirement that a party adduce documentary evidence in support of testimony to defeat a summary judgment motion. *See Illinois Conference of Teamsters and Employers Welfare Fund v. Steve Gilbert Trucking*, 71 F.3d 1361, 1367 (7th Cir. 1995) (auditor's deposition testimony with accompanying affidavit were sufficient to establish facts for summary judgment).

provision and was terminable as of the end of that two-year term upon three months' written notice. *Id.* at ¶¶ 8, 9.

VH and HC were distinct and unrelated legal entities. VH was owned by Michael Vaughn ("Vaughn") and his wife; Vaughn was VH's president and provided management services to the hotel. DSOF ¶ 6; Resp. to PSOF ¶ 5. Neither of the Vaughns owned any interest in HC or played any role in its founding. During the time that Vaughn managed the hotel, VH and HC maintained separate financial records, filed separate tax returns, and did not share bank accounts. DSOF ¶ 9. There is no evidence of record suggesting that either company failed to observe the formalities necessary to preserve its independent existence.

Under the contract between HC and VH, all personnel working at the hotel were employees of HC. Pl.'s Resp. to Def.'s Summ. J., Ex. 2, ¶ 3(b). Frey and other staff members who worked at the hotel were on HC's payroll. DSOF ¶ 4. Vaughn was the only person on VH's payroll.[4] DSOF ¶ 7. Under the terms of the contract, it was VH's responsibility to manage the Holiday Inn's personnel and to oversee the day-to-day operations of the hotel. There is no dispute that VH was responsible, in part, for hiring, supervising, directing, discharging, and determining the compensation, other benefits, and terms of employment of all personnel working in the hotel. PSOAF ¶ 4. Indeed, in its contract with VH, HC even agreed that it would "not give direct instructions to any employee of the [hotel] or to [VHI] employees whose instructions may interfere, undermine, conflict with or affect in any manner the authority and chain of command as established by [VHI]." Resp. to PSOAF ¶ 9. Vaughn issued workers at the hotel a "Vaughn

---

[4] For two months in 2008, and for four months in 2009, VH had an additional employee named Jacqueline Naughton. Def's Reply in Supp. of Mot. for Summ. J, at 3. Hence, at most Ms. Naughton worked for VH eight weeks in 2008 and sixteen weeks in 2009. But in order to count as an employee under Title VII, the employee must work at least twenty weeks in a single calendar year. 42 U.S.C. § 2000e (b).

3

Hospitality Employee Handbook" that consistently referred to workers at the hotel as VH employees. Pl.'s Resp. to Def.'s Summ. J., Ex. 3, ¶¶ 1.1, 1.2.

Frye alleges that Vaughn sexually harassed her throughout the term of her employment. Sometime in early 2010, Frey went on maternity leave. P's Add'l SOF, ¶ 29. While she was on leave, Frey filed a discrimination claim with the EEOC and the IHR based on Vaughn's alleged harassment. *Id.* Frey returned from maternity leave on April 12, 2010, but was fired one week later for allegedly stealing another employee's cell phone. Frey maintains that the theft allegation was fabricated by the defendants as a pretext to terminate her employment in retaliation for having filed an EEOC charge. After receiving right-to-sue letters as to both her harassment and retaliation claims, Frey brought this civil complaint against both HC and VH asserting claims for sexual harassment, hostile work environment, pregnancy discrimination, and retaliation.

## DISCUSSION

VH's motion for summary judgment presents a single question: was Frey an employee of VH? Summary judgment is only appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Although there are number of contested facts on the record, they are not material to the resolution of this question and summary judgment is appropriate.

Title VII governs only "employers," and not all employers at that. In order for a business to fall within the purview of Title VII, the organization must employ a minimum of fifteen employees for at least twenty weeks during the calendar year. 42 U.S.C. § 2000e(b). The IHRA includes the same small firm exemption, except for claims of sexual harassment; as to harassment claims, an employer is liable if it has any employees. 775 Ill. Comp. Stat. 5/2-101

(B)(1)(b).⁵ The purpose of the minimum employee requirement "is to spare very small firms from the potentially crushing expense of mastering the intricacies of the antidiscrimination laws, establishing procedures to assure compliance, and defending against suits when efforts at compliance fail." *Papa v. Katy Indus., Inc.*, 166 F.3d 937, 940 (7th Circ. 1999).

VH contends that it is exempt from liability because at no point did it have the minimum of fifteen employees on its payroll. The Seventh Circuit has described an entity's payroll records as "the starting point" to determine who counts as the employees of an employer.⁶ *Smith v. Castaways Family Diner*, 453 F.3d 971, 974 (7th Cir. 2006) (citing *Walters v. Metro. Educ. Enters., Inc.,* 519 U.S. 202, 206-07 (1997)). That is because "the employment relationship is most readily demonstrated by the individual's appearance on the employer's payroll." *Walters,* 519 U.S. at 206. And here, there is no dispute about whose payroll Frey and the other hotel staff were on: Hotel Coleman's.

Their presence on HC's payroll notwithstanding, Frey maintains that she and the other hotel workers were also employees of VH by virtue of the nearly total control that VH exercised over the terms and conditions of their employment. Resp. at 6 ("There is certainly nothing that precludes an employee from having more than one employer").⁷ She contends that common law

---

⁵ This is true whether the harassment claim is of the *quid pro quo* or hostile environment variety. *See* 775 Ill. Comp. Stat. 5/2-101(E) (defining "sexual harassment" to include both).

⁶ This is not to say that status on a company's payroll is dispositive of whether an individual providing services to a company is an employee or an independent contractor. As this Court explained in *Volling v. Antioch Rescue Squad*, No. 11 C 04920, 2012 WL 6021553, at *8 (N.D. Ill. Dec. 4, 2012), in *Walters* the Supreme Court expressly affirmed that "the ultimate touchstone" for the determination of the number of employees for jurisdictional purposes is "whether an employer had employment relationships" with the required number of workers, and agreed that an individual who is on the payroll would not count toward the 15-employee threshold if "not an 'employee' under traditional principles of agency law." 519 U.S. at 211–12.

⁷ Although it is possible for entities to share liability under Title VII as joint employers, the concept "has been employed infrequently in employment cases in this circuit." *Whitaker v. Milwaukee Cnty., Wisconsin*, 772 F.3d 802, 810 (7th Cir. 2014). That is likely because the tests

5

principles of agency should be used to determine whether the hotel staff were also employees of VH. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 328 (1992) (finding that whether insurance agent was employee or contractor turned on principles of agency). And since VH controlled the staff, and control is the touchstone of the master-servant relationship, *Castaways Family Diner*, 453 F.3d at 977, Frey argues that she and the rest of the hotel staff should also be counted as employees of VH for the purposes of Title VII. If that is correct, then VH had more than 15 employees and qualifies as an employer; the parties agree that more than 15 people worked at the hotel.

In focusing on *Darden* and common law agency principles to answer the question of whether the hotel's staff should be considered employees of VH, however, Frey has overlooked the Seventh Circuit's holding in *Castaways Family Diner* that "[e]mployers are those whose authority and interests are so aligned with the business as to render them the legal personification *of* the business, *i.e.,* principals rather than agents." 453 F.3d at 978 (emphasis in original). In *Castaways*, as here, the defendant business, a restaurant, denied liability under Title VII, asserting that it had fewer than 15 employees when its two managers were excluded from the tally. The restaurant argued that the managers should be counted as "employers" rather than as "employees" because the owner had "ceded near-total if not total managerial discretion" to them. *Id.* They, like VH, had been given authority to "hire and fire other employees, determine the

---

on which the two Seventh Circuit cases Frey relies on for this proposition have both been abrogated. *EEOC v. Illinois, 69 F.3d 167, 171* (7th Cir. 1995), the first case Frey cites, relied on the "integrated enterprise" test the Seventh Circuit later rejected in *Papa v. Katy Industries*. *See* 166 F.3d at 942;*see also infra* at p. 8. The second case Frey cites, *Heinemeier v. Chemetco, Inc.,* 246 F.3d 1078, 1082-83 (7th Cir. 2001), employed the "economic realities test" that the Supreme Court expressly rejected in *Glackamas Gastroenterology Assocs., P.C. v. Wells,* 538 U.S. 440, 445-46 (2003).

schedules and rules by which those employees work, . . . and otherwise make the day-to-day decisions necessary to operate" the business. *Id*.

The district court agreed with the restaurant, but the Seventh Circuit reversed, holding that the two managers could not be considered to be "employers" because their authority over the operations and staff of the restaurant had been delegated to them by the business owner; they possessed no independent claim of authority with respect to the management of the business. The Court of Appeals explained:

> [A] distinction must be drawn between the power that a … manager exercises as of right and the power that he exercises by delegation. It is not at all unusual for the owner of a business enterprise to bring someone else in to run the business on her behalf . . . . In practice, that person may be given virtually unbounded day-to-day discretion and authority in operating the business. Nonetheless, he exercises that discretion and authority at the pleasure of the business owner; he has no inherent right, as the owner does, to control the business.

*Castaways Family Diner*, 453 F.3d at 980.

In focusing on the degree of control that VH exercised over the hotel staff and the hotel's operations, Frey commits the same error that led to reversal of the district court's ruling in *Castaways Family Diner*: She ignores the ***source*** of VH's authority, namely the delegation of management authority by HC to VH. It is undisputed that VH's authority derived not from ownership of the business that Frey and the staff supported—namely, the hotel—but from its management contract with HC. Through that contract, HC hired VH as its agent to perform services on its behalf, namely, to manage the hotel. In so doing, HC delegated to VH authority to do many things, including authority to hire, fire, and supervise the staff of the hotel. But VH's authority to do these things was derivative of HC's ultimate authority, by virtue of its ownership, over the hotel. As the hired manager, VH wasn't an employer of the hotel staff—it was part of the hotel staff. VH was an agent, not a principal, and the fact that one agent (VH) exercises

7

authority over another agent (Frey) does not render the senior agent the junior's employer. Were that the case, any employee with supervisory or management responsibility would be deemed an employer under Title VII. *Castaways Family Diner* rejected that proposition as "a liberal type of veil-piercing." *Id.* at 979. "Determining whether an individual controls or has the right to control an enterprise, and thus constitutes an employer, must take into account not only the authority that person wields within the enterprise but also the source of that authority." *Id*. at 984.

That VH possessed contractual authority to manage the hotel does not affect the analysis. The form of the delegation does not matter, as the Seventh Circuit instructed in *Papa v. Katy Industries,* where it rejected the "integrated enterprise" test for determining whether employees of affiliated enterprises should be aggregated for purposes of determining whether they could be deemed "employers" under Title VII. 166 F.3d at 942. Observing that small firms must integrate aspects of their operations with other firms to achieve the economies of scale necessary to compete, the Seventh Circuit explained that integration should not be penalized by forfeiting Title VII's small firm exemption through aggregation of the number of employees among integrated enterprises. *See id.* at 940; *see also Worth v. Tyer*, 276 F.3d 249, 260 (7th Cir. 2001) (confirming that in this Circuit rejected use of the integrated enterprise test to determine whether multiple corporate entities could be considered proper defendants in employment discrimination cases even if one of them did not directly employ the plaintiff). Frey contends that *Katy* applies only in the context of affiliated firms, Resp. at 6, but that is not correct; in *Katy*, the Seventh Circuit expressly noted that the premise applies to integration "whether by contract or by ownership. The choice between the two modes of integration is unrelated to the exemption." 166 F.3d at 942; *see also id*. (asking rhetorically, "[w]hy should it make a difference if the integration takes the form [of contracts] instated of common ownership . . . ?"). *Katy* draws no distinction

between integration by ownership or contract; neither provides a basis to aggregate the employees of the integrated firms for purposes of assessing Title VII liability.

*Katy* nevertheless explains that there are three narrow situations where aggregating the employees of two separate entities for the purposes of assessing liability as an employer under Title VII would be appropriate, but this is not one of them. *Katy,* 166 F.3d at 940. All are variants on a theme that has no traction in this case, namely that the corporate distinctions between the firms are a sham. The first is the situation where the piercing the corporate veil would otherwise be appropriate, such as when a corporation fails to observe corporate formalities. *Id.* The second is where an enterprise splits itself into smaller components for the express purpose of avoiding liability under the discrimination laws. *Id.* at 941. Lastly, aggregation of two businesses' employees is appropriate when a parent corporation directs a subsidiary to commit the discriminatory act or practice that is at issue. *Id.* To these scenarios may be added another hypothesized in *Castaways Family Diner,* namely, where "the named owners, directors, and officers of the business are mere marionettes whose strings are being pulled by the purported employee." 453 F.3d at 981.

The record makes readily apparent that none of these situations are present here. Frye does not contend, and there is nothing in the record to suggest, that any of the conditions normally required for piercing the corporate veil are present here. And, given that HC and VH were never part of the same entity, it cannot be said that they were part of a larger organization that split into smaller units to avoid liability under the discrimination laws. Nor can it be said (and it has not been alleged) that either company gave any direction to the other regarding Frey or that HC's owner was a shill for Vaughn. It is undisputed that there was no relationship between the companies other than their contractual agreement; VH and Vaughn had nothing to

do with the founding of HC; possessed no ownership interest in HC; and played no role in the management of HC (as opposed to the management of the hotel). There is, in short, nothing in the record that would support a finding that the ostensible ownership of HC was a sham and that VH and Vaughn were the real powers behind the throne. *Id.* at 982 ("no one is suggesting that Gonzalez's ownership of Castaways is a sham").

There is, then, no basis to conclude that VH was Frey's employer; accordingly, VH cannot be liable for Vaughn's alleged harassment. That is not to say that Frey has no claims based on the alleged harassment she endured, only that HC was Frey's employer and it is to HC that Frey's claim must be directed. And as noted, Frey also sued HC and has obtained a judgment against it. Under Title VII, however, she cannot impose joint liability on VH as her employer when VH had no independent authority to manage HC's business; its authority over Frey was wholly derivative of HC's authority and the Seventh Circuit's holding in *Castaways Family Diner* therefore requires judgment in VH's favor. This holds true for Frey's claims under the IHRA as well; in assessing IHRA claims, it is appropriate to rely on federal cases interpreting Title VII because the IHRA is similar in intent and construction. *Gusciara v. Lustig*, 806 N.E.2d 746, 750 (Ill. App. 2d Dist. 2004) (court noting that in construing and applying the IHRA, Illinois courts "have long followed federal cases interpreting Title VII of the Civil Rights Act of 1964."); *Carter Coal Co. v. Human Rights Comm'n*, 261 Ill. App. 3d 1, 14, 633 N.E.2d 202, 211 (Ill. App. 1994). Because there is no substantive difference between Frey's claims under the IHRA and her Title VII claims in this regard, the Court will exercise its discretion under 28 U.S.C. § 1367(a) and grant judgment in VH's favor on those claims as well. *Bailey v. City of Chicago,* 779 F.3d 689, 696 (7th Cir.2015) (district courts "may exercise supplemental

jurisdiction over state law claims that share 'a common nucleus of operative facts' with a federal claim properly before the court")," quoting 28 U.S.C. § 1367(a).

*   *   *

For the foregoing reasons, VH's motion for summary judgment as to Frey's claims is granted.

Dated: October 9, 2015                                  John J. Tharp, Jr.
                                                        United States District Judge